UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:21-cv-00119-LLK

**ANTHONY K.**                                                                                                       **PLAINTIFF**

**v.**

**KILOLO KIJAKAZI, Acting Commissioner of Social Security**                              **DEFENDANT**

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Plaintiff's complaint seeking judicial review, pursuant to 42 U.S.C. § 405(g), of the final decision of the Commissioner denying his claim for Supplemental Security Income (SSI) under Title XVI of the Social Security Act.  The fact and law summaries of the parties are at Doc. 16 and 19.  The parties have consented to the jurisdiction of the undersigned Magistrate Judge to determine this case, with any appeal lying before the Sixth Circuit Court of Appeals.  [Doc. 9].

Plaintiff argues that the administrative law judge's (ALJ's) reasons for finding Dr. Siva's medical opinions to be inconsistent with those of Drs. Faulkner and Dervishi are not supported by substantial evidence.  [Doc. 16 at PageID.1542-44].  Plaintiff further argues that the Commissioner erred in not considering the limiting effects of his severe headaches.  *Id.* at 1533-34.

Because the arguments are persuasive, this Opinion will REMAND this matter to the Commissioner for a new decision.

**Procedural history**

On June 26, 2017, Plaintiff was electrocuted while working on a roof.  [Doc. 16 at PageID.1532].

On August 18, 2017, Plaintiff applied for SSI.  *Id.* at PageID.1531.

On July 8, 2019, the ALJ issued a decision, finding that Plaintiff was not disabled from August 18, 2017, through July 8, 2019.  [Doc. 8 at 88-104].  The ALJ found that Plaintiff retained the ability to perform a significant number of unskilled, light jobs in the national economy such as bagger, laundry sorter, hand

packager. *Id.* at 102-03. The ALJ cited Rule 202.13 of Appendix 2 of the regulations, which directs an ultimate finding of "not disabled," as a framework for decision making. *Id.* at 102.

On April 1, 2021, the Appeals Council notified Plaintiff of its intent, after a 30-day comment period, to amend the ALJ's decision and issue a partially favorable decision. *Id.* at 179-80. The Appeals Council proposed to find that Plaintiff became disabled on July 8, 2019, based on a "non-mechanical" but direct application of Rule 202.04, which directs an ultimate finding of "disabled." *Id.* at 179-80.

The only difference between the rule relied on by the ALJ (202.13) and the one proposed by the Appeals Council (202.04) is that Rule 202.13 contemplates an individual who is "closely approaching advanced age" (50-54 years of age) and Rule 202.04 contemplates an individual who is of "advanced" age (55 years and older). In other words, the Appeals Council proposed to treat Plaintiff's fifty-fifty birthday as July 8, 2019, although his actual fifty-fifth birthday was December 24, 2019. *Id.* at 66.

On June 24, 2021, the Appeals Council issued the Commissioner's final decision. *Id.* at 8-12. The Appeals Council found that Plaintiff was not disabled during the closed period from August 18, 2017, when he filed his SSI application, through July 7, 2019 (the day before the ALJ's decision), but that Plaintiff became disabled on July 8, 2019 (the date of the ALJ's decision, which the Appeals Council agreed to treat as Plaintiff's fifth-fifth birthday), pursuant to Rule 202.04. *Id.*

**The Appeals Council's decision**

The Appeals Council analyzed Plaintiff's disability claim pursuant to the five-step sequential evaluation process, which applies in all Social Security disability cases.

First, the Appeals Council found that, from August 18, 2017, through July 7, 2019, Plaintiff did not engage in substantial gainful activity. [Doc. 8 at 10].

Second, the Appeals Council found that Plaintiff had the following severe, or vocationally significant, impairments: nerve and muscle disorder, central nervous system vascular disorder, speech loss, ischemic heart disease, degenerative disc disease, and chronic obstructive pulmonary disease. *Id.*

Third, the Appeals Council found that Plaintiff did not have an impairment that satisfied the medical criteria of any impairment listed in Appendix 1 of the regulations. *Id.*

As in any case that proceeds beyond Step 3, the Appeals Council determined Plaintiff's residual functional capacity (RFC), which is defined as the "most you can still do despite your limitations." 20 C.F.R. § 416.945(a)(1). The Appeals Council found that, notwithstanding his severe impairments, Plaintiff could perform:

> … light work as defined in 20 CFR 416.967(b) … could only frequently stoop, kneel, crouch, balance, and climb ramps and stairs … could never climb ladders, ropes, and scaffolds … could occasionally crawl … could frequently handle with the left upper extremity … could occasionally communicate with co-workers and the public … could not require frequent verbal or telephone communications … should avoid concentrated exposure to vibrations and pulmonary irritants, such as fumes, odors, dusts, gases, and poor ventilation … should avoid all exposure to workplace hazards, such as unprotected heights or moving mechanical parts.

[Doc. 8 at 10-11].

Fourth, the Appeals Council found that Plaintiff had no past relevant work. *Id.* at 11.

Fifth, the Appeals Council found that, from August 18, 2017, through July 7, 2019, Plaintiff retained the ability to perform a significant number of unskilled, light jobs in the national economy such as bagger, laundry sorter, and hand packager. *Id.*

In his complaint, Plaintiff challenges the Appeals Council's finding of lack of disability from August 18, 2017 through July 7, 2019. [Doc. 1].

### Dr. Siva's medical opinions

As noted above, on June 26, 2017, Plaintiff was electrocuted while working on a roof. [Doc. 16 at 1540]. According to Plaintiff, he was electrocuted by 440 volts of electricity for almost three minutes. *Id.* This allegedly resulted in two mini-strokes, left-sided pain and weakness, a need for cane use for ambulation and balance, damage to the heart requiring insertion of a cardiac stent, speech impairment, neurocognitive impairment, and headaches. [Doc. 16 at PageID.1540-44].

3

On December 4, 2017, Plaintiff began treatment with his primary healthcare provider, Niranjan Siva, M.D. [Doc. 8 at 1326]. Plaintiff saw Dr. Siva monthly. *Id.*

On April 22, 2019, apparently at Plaintiff's request, Dr. Siva completed the Stroke Medical Source Statement. *Id.* at 1327-29. Dr. Siva opined, among other things, that Plaintiff: 1) Can stand/walk for less than 2 hours (total) in an 8-hour working day; 2) Can use his left upper extremity (for handling, fingering, and reaching) only 10% of an 8-hour working day; and 3) Must use a cane or other assistive device when standing/walking. *Id.* at 1327-29.

Dr. Siva attributed the foregoing medical opinions to the following: left arm pain, left leg pain, cannot sit or stand for long period of time, trouble walking, "reflexes are off … seem more brisk on left." *Id.* Additionally, when asked to identify Plaintiff's physical symptoms, Dr. Siva circled: balance problems, poor coordination, weakness, unstable walking, and pain. *Id.* at 1326.

### Dr. Siva's medical opinions would restrict Plaintiff to sedentary work.

Two primary differences between sedentary and light work are: 1) Sedentary work generally requires sitting for 6 hours per 8-hour workday (with standing/walking allowed during the remaining 2 hours), and light work generally requires standing/walking for 6 hours per 8-hour workday (with sitting allowed during the remaining 2 hours); and 2) Unskilled light work generally requires use of the arms and hands to grasp, hold, and turn objects, as opposed to the finer activities in much sedentary work, which require precision use of the fingers as well as use of the hands and arms. Social Security Ruling (SSR) 83-10, 1983 WL 31251, *5-6.

Dr. Siva's opinion that Plaintiff can stand/walk for less than 2 hours (total) in an 8-hour working day would preclude light work because light work requires 6 hours (total) in an 8-hour working day of standing/walking. Dr. Siva's opinion that Plaintiff can use his left upper extremity (for handling, fingering, and reaching) only 10% of an 8-hour working day would preclude light work because light work generally requires use of the arms and hands to grasp, hold, and turn objects. Dr. Siva's opinions that Plaintiff must

4

use a cane or other assistive device and that Plaintiff has balance problems and unstable walking would preclude light work because cane use for balancing would preclude bilateral use of the upper extremities. In summary, Dr. Siva's medical opinions would restrict Plaintiff to sedentary work.

### Plaintiff is disabled if restricted to sedentary work.

As noted above, the ALJ found that Plaintiff was not disabled from August 18, 2017, through July 8, 2019, applying Rule 202.13 as a framework, and the Appeals Council found Plaintiff became disabled beginning on July 8, 2019, applying Rule 202.04 directly. [Doc. 8 at 102, 179-80]. If Plaintiff is limited to sedentary work, Rules 201.12 and 201.04 (the Rules that correspond to Rules 202.13 and 202.04 for an individual who is limited sedentary work) would direct an ultimate finding of "disabled."

### The ALJ found Dr. Siva's medical opinions are inconsistent with those of Drs. Faulkner and Dervishi.

The Appeals Council adopted certain portions of the ALJ's decision as part of the Commissioner's final decision, including the ALJ's explanation for finding Dr. Siva's medical opinions to be "not persuasive." [Doc. 8 at 101].

The ALJ was "not persuaded with" Dr. Siva's opinions, finding them to be "inconsistent with" those of Drs. Faulkner and Dervishi:

> [T]he claimant's treating doctor Michael Faulkner M.D. opined that the claimant does not require the use of a cane or other assistive device to ambulate effectively. Further, Adnan Dervishi M.D.'s findings reflect that the claimant has reduced strength in his upper left extremity. However, he had no reduced strength in his upper right extremity and bilateral lower extremities and the claimant was capable of standing and sitting without difficulty. Moreover, physical examination findings reflect that the claimant's range of motion was within normal limits.

*Id.*

### The ALJ's finding that Dr. Siva's medical opinions are inconsistent with those of Drs. Faulkner and Dervishi is not supported by substantial evidence.

The ALJ found Dr. Siva's medical opinions are inconsistent with those of Drs. Faulkner and Dervishi. But that finding is not supported by substantial evidence for three reasons.

5

First, Dr. Faulkner did **not** opine that Plaintiff does not require the use of a cane or other assistive device to ambulate effectively. Dr. Faulkner opined that such use was not required "to [Dr. Faulkner's] knowledge." [Doc. 8 at 1135]. Dr. Faulker, Plaintiff's cardiologist, saw Plaintiff only in December 2017 and in March 2018. *Id.* at 1134. Dr. Faulkner would not have been in a position to know whether Plaintiff needed a cane. In contrast, Dr. Siva saw Plaintiff monthly and opined that Plaintiff needs a cane or other assistive device to stand/walk. *Id.* at 1326, 1328.

Second, Dr. Dervishi conducted a one-time examination of Plaintiff on April 28, 2018. *Id.* at 555. Dr. Dervishi observed that Plaintiff could "stand without difficulty" but had "difficulty walking heel to toe." *Id.* at 556. This was not inconsistent with Dr. Siva's opinion that Plaintiff can stand/walk for less than 2 hours (total) in an 8-hour working day. *Id.* at 1327.

Third, Dr. Dervishi observed "4/5 left grip strength, 4/5 upper left extremity strength, 5/5/ right grip strength, 5/5 right upper and bilateral lower extremity strength" and concluded that "in my opinion, physical exam demonstrates residual sequela from stroke." *Id.* at 556. This was not inconsistent with Dr. Siva's opinion that Plaintiff can use his left upper extremity (for handling, fingering, and reaching) only 10% of an 8-hour working day. *Id.* at 1329.

**The ALJ's decision was not supported by substantial evidence
and did not accord with applicable legal standards.**

Plaintiff filed for SSI on August 18, 2017. [Doc. 8 at PageID.1531]. Therefore, the new rules for weighing medical opinions apply in this case. *See* 20 C.F.R. § 416.920c ("For claims filed ... on or after March 27, 2017, the rules in this section apply.").

Under the new regulations, an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources." 20 C.F.R. § 416.920c(a). An ALJ must consider "supportability, consistency, relationship [with the claimant], specialization, and other factors" when determining the persuasiveness of an opinion. 20 C.F.R. 416.920c(c)(1)-(5). But the ALJ need only explain

6

how he considered the supportability and consistency factors, which are the two most important in determining the persuasiveness of a medical source's opinion or a prior administrative medical finding. 20 C.F.R. § 416.920c(b)(2). The more relevant the objective medical evidence and supporting explanations presented, the more persuasive the medical opinion(s) will be. 20 C.F.R. § 416.920c(c)(1). The more consistent the medical opinion(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive it will be. 20 C.F.R. § 416.920c(c)(2).

As indicated above, one of the new rules for weighing medical opinions provides that "we [the Commissioner] will explain how we considered the supportability and consistency factors for a medical source's medical opinions … in your determination or decision." 20 C.F.R. § 416.920c(b)(2). In this case, the ALJ's decision explained its consideration of the "consistency" factor for Dr. Siva's opinions. But this Opinion has already concluded that the ALJ's finding that Dr. Siva's medical opinions are inconsistent with those of Drs. Faulkner and Dervishi is not supported by substantial evidence. The ALJ's decision did not comport with applicable legal standards because it did not explain its consideration of the "supportability" factor as required by 20 C.F.R. § 416.920c(b)(2).

### The ALJ erred in not considering Plaintiff's severe headaches.

Finally, Plaintiff argues that the Commissioner erred in not considering the limiting effects of his severe headaches and neurocognitive impairment. [Doc. 16 at 1533-34].

"Severe" is a term of art in Social Security disability law that means approximately "vocationally significant." *Germany-Johnson v. Comm'r*, 313 F. App'x 771, 774 (6th Cir. 2008). The Sixth Circuit construes the severity requirement as a "de minimis hurdle" intended only to "screen out totally groundless claims." *Id.* (quoting *Higgs v. Sec'y*, 880 F.2d 860, 862 (6th Cir. 1988) and *Farris v. Sec'y*, 773 F.2d 85, 89 (6th Cir. 1985)). Thus, if an impairment has more than a minimal effect on the claimant's ability to do basic work activities (regardless of age, education, and prior work experience), the ALJ must

7

treat the impairment as "severe" and proceed to evaluate the limiting effects of the impairment on the claimant's ability to perform past relevant work and other jobs in the national economy. *Id.*

In June 2018, Plaintiff reported headaches to Dr. Siva that lasted for three weeks. [Doc. 8 at 1239]. Dr. Siva prescribed Fioricet. *Id.* at 1245. In March 2019, Plaintiff reported headaches occurring on 15 days out of a month, lasting four hours each. *Id.* at 1451. Dr. Siva recommended Botox injections. *Id.* at 1458. In April 2019, in completing the Stroke Medical Source Statement, Dr. Siva noted Plaintiff's "intractable chronic migraines." *Id.* at 1326. In April 2019, at the administrative hearing, Plaintiff emphasized the importance of his headaches to his disability claim, testifying that he has a headache every day that lasts for two to three hours. *Id.* at 32-33. Neither the Appeals Council's decision nor the ALJ's decision mentions Plaintiff's headaches. *Id.* at 88-104.

The ALJ erred in not considering Plaintiff's severe headaches.

Regarding Plaintiff's allegedly severe neurocognitive impairment, the Appeals Council found that Plaintiff's speech impairment limited him such that he "could occasionally communicate with co-workers and the public … could not require frequent verbal or telephone communications." [Doc. 8 at 10-11]. The ALJ addressed Plaintiff's neurocognitive impairment, if any, in the context of his speech impairments. *Id.* at 96-98, 100-01. Plaintiff has not alleged or proven that he has neurocognitive limitations not accommodated by his speech limitations. Therefore, the Appeals Council's not listing cognitive impairment as a separate, severe impairment was, at worst, harmless error. *See Emard v. Comm'r*, 953 F.3d 844, 852 (6th Cir. 2020) (explaining that an erroneous finding of non-severity at step two is harmless where the ALJ considered the effects of non-severe impairments at subsequent steps).

**A judicial award of benefits is unwarranted.**

When (as here) a reviewing court has determined that an ALJ's decision is not supported by substantial evidence and/or does not accord with applicable legal standards, it must determine whether to judicially award benefits or remand for further administrative proceedings. *Wiser v. Comm'r*, 627 F.

App'x 523, 526 (6th Cir. 2015).  A judicial award is appropriate "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits."  *Id.* (quoting *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994)).

As discussed above, in the present case, acceptance of Dr. Siva's medical opinions would restrict Plaintiff to sedentary work and would require an ultimate finding of "disabled" pursuant to Rules 201.12 and 201.04.  Nevertheless, a judicial award of benefits is unwarranted for two reasons.

First, indicated above, the ALJ's decision failed to explain the extent to which Dr. Siva's medical opinions were supported by the medical and other evidence as required by 20 C.F.R. § 416.920c(b)(2).  This Court lacks the medical expertise to consider the supportability factor in the first instance.  Plaintiff insists that he had two strokes or mini strokes [Doc. 16 at PageID.1532, 34, 36, 40, 42-44], and Plaintiff presumably gave Dr. Siva the Stroke Medical Source Statement to complete on his behalf.  Yet, when asked directly "Did your patient have a stroke?" Dr. Siva circled "No."  [Doc. 8 at 1326].  The Court further observes that Dr. Siva did not identify any neurological damage in support of his opinions.  But the Court has no way of knowing whether Plaintiff's electrocution injuries are similar to those of a stroke victim or whether neurological damage would be expected.

Second, Plaintiff cites and this Opinion finds no authority for a judicial award of benefits following error in applying the new regulation at 20 C.F.R. § 416.920c(c).

## ORDER

Because the Commissioner's final decision is not supported by substantial evidence and does not comport with applicable legal standards, the Court hereby REMANDS this matter to the Commissioner for a new decision and any further proceedings deemed necessary and appropriate by the Commissioner.

July 22, 2022

Lanny King, Magistrate Judge
United States District Court